**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

**ANTHONY JONES,**

                    **Petitioner,**          **05 Civ. 8997 (JGK)**

         **- against -**                     <u>**OPINION & ORDER**</u>

**SUPERINTENDENT GARY GREENE,**

                    **Respondent.**
─────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    Petitioner Anthony Jones, who appears pro se, seeks a writ
of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner
was convicted in the New York State Supreme Court, New York
County, of one count of attempted criminal possession of a
weapon in the second degree and three counts of attempted
criminal possession of a weapon in the third degree, and was
sentenced to one indeterminate prison term of fourteen years to
life for the former count, and three indeterminate terms of two
to five years for the latter three counts, all to be served
concurrently.  (Sentencing Transcript ("S.") at 19.)

    For the reasons explained below, the petition for habeas
corpus is **denied**.

**I.**

**A.**

The record submitted in connection with the present application discloses the following facts.[1]  In the late fall of 1999, Christopher Brown ("Brown"), a police informant acting at the request of Drug Enforcement Administration ("DEA") Special Agent William Perry ("Agent Perry"), contacted his longtime friend Maunzel Ojeah ("Ojeah") about finding a cocaine supplier for Brown.  (Trial Transcript ("Tr.") 312-17.)  On November 11, 1999, Agent Perry and Brown drove Ojeah to a restaurant in Newark, New Jersey, to discuss a drug transaction and to call Damar Rodriguez ("Rodriguez"), whom Ojeah had recommended as a supplier.  (Tr. 315, 317; Brief for Defendant-Appellant to Appellate Division, First Department dated June 2003 attached as Ex. A to the Declaration of Frederick Wen in Opposition to Habeas Petition dated Sept. 28, 2006 ("Wen Decl.") at 3; Brief for Respondent to Appellate Division, First Department dated December 2003 attached as Ex. B to Wen Decl. at 4.)  At the restaurant, Ojeah called Rodriguez, who identified himself as

---

[1] The respondent represents that the complete trial transcripts were not available because the New York Supreme Court Law Library did not provide the transcript for the suppression hearing or the proceedings on April 23 and 25, 2001.  For these omissions, the parties have relied on the narrative summary contained in the appellate briefs.  See Rule 5(c) of the Rules Governing § 2254 Cases; Smith v. Green, 05 Civ. 7849, 2006 WL 1997476, at *1 n.1 (S.D.N.Y. July 18, 2006) (citing Bundy v. Wainwright, 808 F.2d 1410, 1415 (11th Cir. 1987)).  The appellate briefs are attached to the Declaration of Frederick H. Wen in Opposition to Petition for a Writ of Habeas Corpus ("Wen Decl.") as exhibits A (the petitioner's brief) and B (the People's brief).

"Panama" (Ex. B at 4), and Agent Perry spoke with both Rodriguez and the petitioner, who identified himself as Rodriguez's "Uncle Teeza". (Tr. 319, 321; Ex. B at 4.) Both Rodriguez and the petitioner agreed to sell three kilograms of cocaine to Agent Perry for $75,000. (Tr. 321-22; Ex. A at 4; Ex. B at 4.) While both parties initially disagreed on a location to complete the transaction (Tr. 323; Ex. A at 4; Ex. B at 4), they eventually settled on New York City (Tr. 323-24; Ex. B at 5).

On the morning of November 15, 1999, Rodriguez, the petitioner, Agent Perry, and DEA Special Agent Gregory Hilton ("Agent Hilton"), the acting group supervisor for the sting operation (Tr. 228), agreed to meet at 7:00 p.m. that evening on the corner of West 31st Street and Eighth Avenue in Manhattan (Tr. 326; Ex. B at 5). With numerous agents conducting surveillance in and around the vicinity (Tr. 228-29, 240-43, 345-47, 397-99; Ex. B at 5), and Agents Hilton and Perry waiting at their parked van (Tr. 329-30, 401-02; Ex. B at 5), Ojeah retrieved Rodriguez and the petitioner, who introduced themselves as "Panama" and "Uncle Teeza", respectively (Tr. 348; Ex. A at 5; Ex. B at 5). Rodriguez and the petitioner stated that they were ready to go ahead with the transaction and asked whether Agent Hilton, who was using the undercover name "Malique" at the time, had the money and a hotel room; Agent Hilton assured them he had both. (Tr. 208, 210.) The

3

petitioner asked repeatedly to see the money but Agent Hilton refused to comply until he saw the cocaine.  (Tr. 210-13.)  Both parties eventually agreed that the petitioner and Rodriguez would bring their car around and the parties would simultaneously count the money and the drugs from inside their respective vehicles.  (Tr. 211-12; Ex. A at 5; Ex. B at 6.)

As Rodriguez and the petitioner left to retrieve their car, they met up with George Rodriguez, the third member of their group, and proceeded to Pennsylvania Station.  (Tr. 252-54, 404-05.)  The agents who were following the three men contacted Agent Hilton to appraise him of the situation, and he ordered them to arrest the petitioner, Damar and George Rodriguez for conspiracy to sell cocaine.  (Tr. 253.)  The agents apprehended the suspects in the rotunda of Pennsylvania Station.  (Tr. 261-62, 367, 407.)  As Special Agent Mathias Koppinger ("Agent Koppinger") searched the petitioner, he found a Bryco 59 semi-automatic .9 millimeter handgun in the petitioner's jacket which appeared to be operational and was loaded with eight rounds of ammunition in the magazine and one in the chamber.  (Tr. 263-65, 462.)  As he removed the gun, Agent Koppinger said "thank you for not shooting me with this," to which the petitioner replied, "why would I do that, I have no beef with you."  (Tr. 265-66.)

The three men were taken to a holding cell in the Amtrak police command center.  (Tr. 268-70, 374.)  The arresting

4

officer seized the property recovered from the defendants, including the Bryco handgun found on the petitioner and another Ruger handgun that Damar Rodriguez attempted to conceal in the holding cell.  (Tr. 377.)  The officer noticed that the serial number on the Bryco handgun was gouged out so "as to make it unreadable."  (Tr. 442.)  The weapon was taken to a ballistics lab where the assigned detective determined that although the handgun appeared to be operational, and had been fired at some point, it was in fact inoperable because the firing pin was broken.  (Tr. 478, 481-83, 494.)

At the petitioner's arraignment, which took place before the results came back from the ballistics lab regarding the operability of the Bryco handgun, the petitioner allegedly told his former attorney, Michael Stokamer ("Stokamer"), that the gun was inoperable.  (Ex. A at 8; Ex. B at 13.)  Stokamer removed himself from the case, and the petitioner's trial attorney, Gary Sunden, attempted to call him as a witness to testify to these statements.  (Ex. A at 8; Tr. 498-500.)  The court denied this request, finding that "the only way to put the defendant's state [of] mind, technically, when it's an element of the crime is for [the defendant] to testify at trial.  Other than that it's pure hearsay."  (Tr. 504.)  The petitioner did not testify at trial.

**B.**

On May 2, 2001, the jury found the petitioner not guilty on five counts, which included attempted first and second degree robbery, attempted second degree grand larceny, and second and third degree criminal possession of a weapon.  The jury found the petitioner guilty of four counts, namely attempted second degree criminal possession of a weapon and three counts of attempted third degree criminal possession of a weapon.  See People v. Jones, 771 N.Y.S.2d 644 (App. Div. 2004) (attached as Ex. C to Wen Decl.).

The trial judge sentenced the petitioner as a persistent violent felony offender to an indeterminate term of fourteen years to life imprisonment for the second degree conviction, and as a second felony offender for three indeterminate, two-to-five-year terms for each of his third degree convictions, all to be served concurrently.  (S. 19.)

The petitioner timely appealed the judgment to the New York State Supreme Court Appellate Division, First Department, on two grounds: (1) whether the petitioner was denied his right to present a defense and his due process right to a fair trial when the court refused to admit testimony from his former attorney (Mr. Stokamer) that petitioner told him, at arraignment and before the ballistics testing, that the gun he was charged with possessing was inoperable; and (2) whether the third degree

counts should be dismissed in the interests of justice.  (See
Ex. A at 2.)  On February 19, 2004, the Appellate Division
unanimously affirmed the judgment below.   Jones, 771 N.Y.S.2d at
644.  The court held that it was proper for the trial court to
exclude defendant's exculpatory statement made to his prior
attorney as inadmissible hearsay.  Id. (citing People v.
Reynoso, 534 N.E.2d 30 (N.Y. 1988)).  The court declined to
review the petitioner's argument that he was entitled to
introduce the statement pursuant to his constitutional right to
present a defense because the argument was "concededly
unpreserved and we decline to review it in the interests of
justice."  Id.  The court went on to find that if it were to
review this claim on the merits, it would find that the
defendant had no constitutional right to introduce "his own
self-serving statement, which was neither reliable nor critical
to his defense."  Id.  With respect to the second claim, the
court declined to invoke its interest of justice jurisdiction to
dismiss the noninclusory concurrent counts.  Id.  The
petitioner's application for leave to appeal to the New York
Court of Appeals was denied on May 12, 2004.  People v. Jones,
814 N.E.2d 472 (N.Y. 2004) (attached as Ex. F to Wen Decl.).

On December 21, 2004, the petitioner filed a pro se motion
to vacate the judgment under N.Y. C.P.L. ("C.P.L.") § 440.10,
arguing that he received ineffective assistance of counsel

7

arising from Mr. Sunden's inadequate preparatory investigation and his failure to call Michael Stokamer and Damar Rodriguez as witnesses.  (See Mot. to Vacate J. attached as Ex. G to Wen Decl.)  On July 1, 2005, Justice Wittner summarily denied the petitioner's motion.  (Supreme Court of New York, New York County Den. of Mot. to Vacate J. attached as Ex. I to Wen Decl.)  On September 22, 2005, the petitioner's application for leave to appeal to the Appellate Division was denied. (Appellate Division, First Department Den. of Leave to Appeal attached as Ex. L to Wen Decl.)

By petition dated October 7, 2005, the petitioner brought this timely pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner raises three grounds for relief.  First, the petitioner contends that the trial court's refusal to allow testimony from the petitioner's former attorney concerning an allegedly exculpatory statement the petitioner made at his arraignment denied him the right to present a defense and the right to a fair trial.  Second, the petitioner argues that he received ineffective assistance of counsel at trial because his attorney mischaracterized the law and failed to obtain testimony from the petitioner's former attorney and from a co-defendant.  Third, although not expressly stated in constitutional terms, the petitioner argues in substance that the indictment was multiplicitous because it charged him with

8

several offenses arising from the same attempted possession of
the underlying weapon, and thus violated his right to be free
from double jeopardy.


## II.

Before obtaining relief under 28 U.S.C. § 2254, a
petitioner must exhaust his available state remedies.  28 U.S.C.
§ 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999);
Jimenez v. Walker, 458 F.3d 130, 148 (2d Cir. 2006).  Under the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
a federal court may only grant a petition for habeas corpus
challenging a state court judgment on a claim adjudicated on the
merits if the adjudication of the claim was (1) "contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States;" or (2) "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. § 2254(d);
see Williams v. Taylor, 529 U.S. 362, 402-03 (2000); Lynn v.
Bliden, 443 F.3d 238, 245 (2d Cir. 2006).

A state court decision is "contrary to" clearly established
law if "the state court arrives at a conclusion opposite to that
reached by [the Supreme Court] on a question of law" or "if the
state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. Williams, 529 U.S. at 405.  A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08.  To meet that standard, "the state court decision [must] be more than incorrect or erroneous"; it "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted).

"For purposes of AEDPA deference, a state court adjudicates a prisoner's federal claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). On the other hand, if the state court expressly or implicitly finds the petitioner's argument to be procedurally barred under state law, creating an independent and adequate basis for denying the claim, the claim is barred from federal habeas review unless the petitioner shows cause for the default and

prejudice as a result of a violation of federal law, or shows that a failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Jimenez, 458 F.3d at 138; Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

## A.

The petitioner first alleges that he was denied his right to present a defense and his due process right to a fair trial when the trial court excluded a proffered statement from his former attorney that at the time of his arraignment, and before the ballistics testing, the petitioner told his attorney that the gun was not operable.  (Supplement A to Pet. for a Writ of Habeas Corpus dated Oct. 14, 2005, attached as Ex. M to Wen Decl.)  Such evidence could have been used to argue that the petitioner lacked the belief that the weapon was operable, which is an essential element for attempted criminal possession of a weapon in the second degree.  See Pen. Law § 110.10 ("[I]t is no defense to a prosecution for such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be.").

The Appellate Division found that the petitioner's claim of a constitutional violation was procedurally barred under state law because the argument was not raised before the trial court. Jones, 771 N.Y.S.2d at 644; see People v. Vega, 725 N.Y.S.2d 306, 308 (App. Div. 2001).  The petitioner's counsel also conceded this point in its appellate brief.  (See Ex. A at 16.) Because there is an independent and adequate basis for denying the claim under state procedural law, the claim is barred from federal habeas review unless the petitioner shows cause and prejudice, or that a failure to consider the claim will result in a fundamental miscarriage of justice.  Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005) (quoting Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005)); see also Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).  The petitioner has failed to make such a showing here and the claim is therefore procedurally barred from habeas review.

In any event, the Appellate Division held that if it were to review the petitioner's claim, "[it] would find that [the] defendant had no constitutional right to introduce his own self-serving statement, which was neither reliable nor critical to his defense."  Jones, 771 N.Y.S.2d at 644.  This determination is entitled to a deferential standard of review because it deals with a state court adjudication on the merits--applying federal law, it disposes of the petitioner's claim on the merits and

reduces its disposition to judgment.  See generally Sellan, 261 F.3d at 312.

"A criminal defendant has a constitutional right--grounded in the Sixth Amendment's Compulsory Process and Confrontation Clauses and the Fourteenth Amendment's Due Process Clause--to 'a meaningful opportunity to present a complete defense.'"  Hawkins v. Costello, 460 F.3d 238, 243 (2d Cir. 2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)).  However, that right is not without limits.  Hawkins, 460 F.3d at 243.  A defendant "must comply with established rules of . . . evidence designed to assure both fairness and reliability," Chambers v. Mississippi, 410 U.S. 284, 302 (1973), and "[does] not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988).

In considering whether the exclusion of evidence in this case violated the petitioner's right to present a defense, the Court must start with "the propriety of the trial court's evidentiary ruling." Wade v. Mantello, 333 F.3d 51, 59 (2d Cir. 2003).  If potentially exculpatory evidence was erroneously excluded, the Court must look to "whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996) (quoting United States v.

Agurs, 427 U.S. 97, 112 (1976)).  If, on the other hand, the evidentiary ruling was correct under state law, the Court's review is limited to whether the "evidentiary ruling is 'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.'" Hawkins, 460 F.3d at 244 (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)); see also Rock v. Arkansas, 483 U.S. 44, 55-56 (1987).  This is in line with the Supreme Court's deference to state evidentiary rules.  See, e.g., Scheffer, 523 U.S. at 308 (finding broad latitude under the Constitution for states to develop rules excluding evidence in criminal trials); Crane, 476 U.S. at 689 ("We acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."); Chambers, 410 U.S. at 302.

In this case, the admissibility of the petitioner's exculpatory statement was properly rejected under state evidentiary law.  See Reynoso, 534 N.E.2d at 31 (holding that the defendant's exculpatory statement was "irrelevant unless offered to prove the truth of the matter asserted--that [the] defendant believed the victim was armed--and for that purpose it was inadmissible hearsay."); see also People v. Jacobs, 716 N.Y.S.2d 664 (App. Div. 2000) (rejecting the defendant's exculpatory statements as inadmissible hearsay).  The exculpatory statement was plainly hearsay--it was an out-of-

court statement by the petitioner at the time of his arraignment offered for the truth of the proposition that the petitioner believed the gun was inoperable at the time of his arrest.[2] People v. Romero, 581 N.E.2d 1048, 1050 (N.Y. 1991).  The statement was irrelevant otherwise.  Reynoso, 534 N.E.2d at 31; see also Duncan, 411 F.3d at 346 n.4 (2d Cir. 2005) (examining the exception to the hearsay rule for state of mind).  Indeed, the excluded testimony would also be hearsay under the Federal Rules of Evidence and would not fall within the state of mind exception allowing its admission.  See Fed. R. of Evid. 803(3) (allowing an exception to the hearsay rule for "a statement of the declarant's then existing state of mind . . . but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will") (emphasis added).

Because the exclusion of the testimony was correct under state law, this Court could find its exclusion to be constitutional error only if the evidentiary ruling were "arbitrary or disproportionate to the purposes [it is] designed

---

[2] The petitioner, in his papers, argues that his trial attorney, Mr. Sunden, erred in arguing that the statement was offered for the petitioner's state of mind, and not for the truth of the matter asserted.  (See Aff. of Anthony Jones ("Jones Aff."), Ex. M to Wen Decl., at 6, December 21, 2004.)  However, this was a reasonable, tactical argument.  The trial court would have plainly rejected the statement if it were offered for the truth of the matter asserted.  Mr. Sunden tried to argue that the statement was not hearsay because it was not offered for the truth of the statement; his argument, however, was properly rejected.

to serve." Hawkins, 460 F.3d at 245.  The Court "can only find the rule arbitrary or disproportionate if it infringes on a 'weighty interest of the accused.'" Id. (quoting Scheffer, 523 U.S. at 308).  The proffered testimony does not satisfy this test.  The petitioner's statement was given under circumstances that cast meaningful doubt on its reliability.  The petitioner made the statement at his arraignment when he had a clear incentive to provide exculpatory evidence.  Further, following his arrest and prior to his arraignment, the petitioner had an opportunity to speak with the co-defendant, Damar Rodriguez, who had given the petitioner the Bryco handgun, who presumably had more knowledge of its operability, and who could have told the petitioner it was inoperable.  (Tr. 504.)  The fact that the gun was loaded at the time it was seized militates against the petitioner's alleged belief that it was inoperable. When given the opportunity to state to the DEA agent at the time of the petitioner's arrest that the gun was inoperable, the petitioner instead stated that he did not shoot the agent because he "[had] no beef with [him]."  The allegedly exculpatory statement therefore bears little assurance of trustworthiness, and its exclusion neither deprived the petitioner of a fair trial nor infringed on a justifiable interest of the petitioner.  See generally Chambers, 410 U.S. at 302.  New York's hearsay rule, as applied in this case, was neither arbitrary nor

16

disproportionate to the purpose of ensuring accuracy and reliability in the criminal trial process.  Therefore, the petitioner's claim does not furnish a basis upon which federal habeas relief can be granted.

**B.**

The petitioner also alleges that his attorney was constitutionally ineffective.  He argues that his counsel, Mr. Sunden, engaged in insufficient trial preparation, resulting in his improper characterization of the elements of the offenses with which the petitioner was charged.  The petitioner also charges that Mr. Sunden was ineffective for failing to call the petitioner's co-defendant, Damar Rodriguez, as a witness, and in unsuccessfully trying to call the petitioner's former attorney to provide allegedly exculpatory evidence.  These claims formed the basis of the petitioner's § 440.10 motion, which was denied by the New York State Supreme Court.  (Ex. I to Wen Decl.)  The state court's rejection of the petitioner's claim, which was based on the arguments raised in the prosecutor's opposition to the motion, is entitled to AEDPA deference.  In any event, the decision was correct as a matter of constitutional law.

Any claims of ineffective assistance of counsel must be evaluated under the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prevail on these

claims, the petitioner must show both (1) that his counsel's
performance was deficient in that it was objectively
unreasonable under professional standards prevailing at the
time, and (2) that counsel's deficient performance was
prejudicial to the petitioner's case.  See id. at 687-88;
Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005).  Self-
serving conclusory allegations to this effect are insufficient
to establish ineffective assistance of counsel.  United States
v. Torres, 129 F.3d 710, 715-717 (2d Cir. 1997); United States
v. Gonzalez, 970 F.2d 1095, 1099-1101 (2d Cir. 1992).

     The petitioner cannot meet the first prong of the
Strickland test merely by showing that his counsel employed poor
strategy or made a wrong decision.  Instead, the petitioner must
establish that his counsel "made errors so serious that counsel
was not functioning as the 'counsel' guaranteed . . . by the
Sixth Amendment."  LanFranco v. Murray, 313 F.3d 112, 118 (2d
Cir. 2002) (quoting Strickland, 466 U.S. at 687); see also
Hernandez v. United States, 280 F. Supp. 2d 118, 122 (S.D.N.Y.
2003).  Indeed, there is a "strong presumption" that the defense
counsel's conduct fell within the broad spectrum of reasonable
professional assistance, and a defendant has the burden of
proving "that counsel's representation was unreasonable under
prevailing professional norms and that the challenged action was
not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381

18

(1985) (citing Strickland, 466 U.S. at 688-89).  To satisfy the
second prong of Strickland, the petitioner must show that "there
is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  Strickland,
466 U.S. at 694; see also Gersten, 426 F.3d at 607.

The trial court's rejection of the petitioner's § 440.10
motion was neither contrary to, nor based upon an unreasonable
application of, federal law as defined in Strickland.  First,
the petitioner claims that his counsel was ineffective in
failing to investigate and call as a witness his co-defendant,
Damar Rodriguez, who had previously pleaded guilty.  However,
the petitioner fails to satisfy the first prong of the
Strickland test because the strategic choice of his attorney,
Mr. Sunden, was not unreasonable.  There was a sufficient basis
for counsel to conclude that calling Damar Rodriguez would have
been unwise given counsel's effort to distance the petitioner
from his co-defendant.  (Affirm. of Gary Sunden ("Sunden
Affirm.") dated May 11, 2005, Attach. B. to Ex. H of Wen Decl.,
¶¶ 4, 5, 13.)  At trial, the petitioner faced five counts
involving his co-defendant: two counts of attempted robbery, one
count of attempted grand larceny, and two counts of criminal
possession of a weapon for Mr. Rodriguez's Ruger handgun.  To

put the co-defendant on the stand would have subjected the petitioner to potential liability on those counts, while the petitioner was eventually acquitted of those counts.

In support of the § 440.10 motion, the petitioner submitted an affidavit from Damar Rodriguez that stated that Mr. Rodriguez had given the petitioner the Bryco handgun well before the date of the crime, and that the two knew at that time it was inoperable. (Aff. of Damar Rodriguez ("Rodriguez Aff.") dated Oct. 30, 2004, attached as Ex. G to Wen Decl., ¶¶ 1-2.) Yet the State submitted an affirmation, including minutes from Mr. Rodriguez's plea allocution, where he stated in open court and under oath that he gave the petitioner the handgun on the date of the crime. (Affirm. of Amy L. Schwartz ("Schwartz Affirm.") dated Jun. 16, 2005, attached as Ex. H to Wen Decl., ¶ 11.) Contrary to the petitioner's belief, Mr. Rodriguez's testimony may have done more harm than good. Certainly, Mr. Sunden's strategy not to call Mr. Rodriguez was not unreasonable. The fact that the petitioner was acquitted on the five counts that involved Mr. Rodriguez and which carried more severe criminal sanctions militates against any finding of ineffective assistance of counsel on this claim.

The petitioner also alleges that his counsel misunderstood the law relating to attempted criminal possession of a weapon, confusing whether the jury needed to find that the gun was

operable at the time of the crime to find the petitioner liable
for attempt.   Here, the petitioner also fails to satisfy either
prong of the Strickland test.   Counsel did misspeak in his
opening statement.   (See Tr. 37 attached as part of Ex. G to Wen
Decl.: "You [the jury] may well find--you're the fact finders,
you're the people who evaluate--that there's simply never any
possession as to the Ruger or the Bryco.   There's no proof he
[the petitioner, Mr. Jones] ever held [the Bryco handgun] when
it was operable and that's what [the State] ha[s] to show.").
Attempted criminal possession of a weapon does not require that
the gun be operable; it requires that the defendant thinks or
believes it to be operable.   However, the Court immediately
clarified that the petitioner was charged with the attempted,
not the completed, crime.   (Id.)   Moreover, counsel properly
summarized the elements of the offense of attempted criminal
possession of a weapon in his summation, including the
requirement that the State prove that the petitioner's intent
was to possess an operable weapon.   (See Tr. 624-25: "And was
there any evidence presented in this case that Anthony Jones
thought [the Bryco handgun] was operable?   The charge is
attempt. . . .   So, as to these counts regarding the Bryco gun,
there's simply no proof the gun was operable on November 15th
and there's no proof presented here that Anthony Jones thought
it was operable on those days.")   The petitioner has failed to

demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," LanFranca, 313 F.3d at 118 (quoting Strickland, 466 U.S. at 687), or that he suffered any prejudice as a result of counsel's initial mistake, subsequently corrected.  Strickland, 466 U.S. at 694.

Finally, the petitioner argues that his counsel's failure to obtain admission of his prior statement to his former attorney regarding the gun's operability rendered counsel constitutionally ineffective.  As discussed above, counsel did try to have the evidence admitted by arguing that it was hot hearsay.  (Tr. 499-500.)  This argument was properly rejected as the out-of-court statement was clearly inadmissible hearsay. See Reynoso, 534 N.E.2d at 31.  There is no basis for claiming ineffective assistance of counsel based on the attorney's failure to obtain admission of a statement that was properly excluded.  See generally Bliden, 443 F.3d at 251-53. Accordingly, there was no error and no prejudice under the Strickland standard.

Because the petitioner has failed to satisfy either prong of the Strickland test, his claims of ineffective assistance of counsel provide no basis for relief.

C.

The petitioner's final claim is for the dismissal of the third degree weapon possession counts against him in the interests of justice because they involve the same weapon as the second degree count.  The petitioner failed to raise any constitutional issue in state court with respect to this claim-- he argued only that the third degree weapon possession counts should be dismissed in the interests of justice.  Similarly, in his habeas petition, the petitioner has failed to raise any constitutional issue in connection with this claim.  See 28 U.S.C. § 2254(a).  The closest constitutional argument that could be made in connection with this claim is that the petitioner's convictions on the third degree weapon possession counts should be dismissed because they violate the petitioner's right to be protected against double jeopardy, and the respondent does forthrightly address the merits of this argument to show that it is without merit.

This claim therefore should be dismissed because it is not exhausted and is now procedurally barred, because it does not allege the violation of a constitutional right, and, to the extent such a claim could be made, it would be without merit.

While the petitioner could have raised a double jeopardy claim in state court, his appellate brief neither raised this constitutional issue nor relied on federal or state cases

employing constitutional analysis.  (<u>See</u> Ex. A at 16–17.)
Instead, the brief relied on the court's discretion in
dismissing the lesser counts in the "interests of justice."
(<u>Id.</u> at 16.)  The federal claim that the petitioner brings
before this Court was therefore never exhausted in state court.
<u>Duncan</u>, 411 F.3d at 348.  Moreover, the petitioner's opportunity
to raise this claim in state court has passed.  <u>See</u> C.P.L.
§ 440.10(2)(c); <u>Aparicio</u>, 269 F.3d at 90 ("When 'the petitioner
failed to exhaust state remedies and the court to which the
petitioner would be required to present his claims in order to
meet the exhaustion requirement would now find the claims
procedurally barred,' federal habeas courts also must deem the
claims procedurally barred.") (quoting <u>Coleman</u>, 501 U.S. at 735
n.1).  The petitioner's claim for dismissal is thus procedurally
defaulted unless he "can demonstrate cause for the default and
actual prejudice as a result of the alleged violation of federal
law, or demonstrate that failure to consider the claims will
result in a fundamental miscarriage of justice." <u>Galdamez</u>, 394
F.3d at 73 (quoting <u>Coleman</u>, 501 U.S. at 750).  The petitioner
has failed to show cause or prejudice, and he does not allege
that he is actually innocent of the conduct on which his
sentence is based.  Accordingly, the petitioner's claim is
barred from federal habeas review.

In any event, there was no constitutional error in failing to dismiss the three charges of attempted criminal possession of a weapon in the third degree.  The prohibition against double jeopardy protects persons from being punished twice for a single criminal offense.  Aparicio, 269 F.3d at 96 (citing Brown v. Ohio, 432 U.S. 161, 165 (1977)).  When a defendant has violated two separate criminal statutes, the protection against double jeopardy is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other.  Rutledge v. United States, 517 U.S. 292, 297 (1996). The fact that both offenses arise out of a single criminal transaction--in this case, the same weapon--is not dispositive. Aparicio, 269 F.3d at 97.  For over seventy years, courts have applied the test set forth in Blockburger v. United States, 284 U.S. 299 (1932), to determine whether two statutes proscribe the same offense:  "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Id. at 304; see also Aparicio, 269 F.3d at 97. Each of the statutory provisions that the petitioner was alleged to have violated in this case included a factual element different from the other statutory provisions.

Accordingly, the petitioner's convictions on the four counts of which he was found guilty did not violate his right to be protected from double jeopardy. See Blockburger, 284 U.S. at 304; United States v. Khalil, 214 F.3d 111, 118 (2d Cir. 2000). The petitioner's challenge to his prosecution on the three counts of attempted criminal possession of a weapon in the third degree provides no basis for habeas relief.

## CONCLUSION

For the foregoing reasons, the petition is **dismissed**. The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253 because the petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Clerk of this Court is directed to enter judgment dismissing the petition and closing the case.

**SO ORDERED.**

**Dated:    New York, New York**
**          July 19, 2007**

John G. Koeltl
United States District Judge

26